UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

|  |  |  |
|---|---|---|
| | ) | |
| | ) | |
| BARBARA HESTON, as Executor | ) | |
| of Timothy Heston's Estate, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 1:20-cv-00479-JRS-MPB |
| | ) | |
| INTERNATIONAL MEDICAL GROUP, | ) | |
| INC., an Indiana Corporation, | ) | |
| SIRIUS INTERNATIONAL INSURANCE | ) | |
| CORPORATION, a foreign corporation, | ) | |
| | ) | |
| Defendants. | ) | |

## Entry Ruling on Pending Motions

In April 2019, Timothy Mark Heston purchased insurance from Defendants.  He was diagnosed with Stage IV Bowel Cancer approximately six months later.  He made a claim for payment of medical expenses, and the claim was denied based on the pre-existing-conditions exclusion clause in the insurance policy.  Heston sued Defendants International Medical Group, Inc. ("IMG"), and Sirius International Insurance Corporation ("Sirius") for breach of contract and breach of the covenant of good faith and fair dealing.  He sought sums allegedly due under the insurance coverage, damages, and a declaratory judgment of the parties' rights under the policy.  Heston passed away, and his wife, Barbara Heston, as Executor of Timothy Heston's Estate, has been substituted as Plaintiff.[1]

---

[1] The Court refers to Timothy Heston as Heston and refers to Barbara Heston as Plaintiff.

Pending before the Court are several motions:  IMG's Motion for Judgment on the Pleadings (ECF No. 270), Sirius's Motion for Judgment on the Pleadings (ECF No. 30), Plaintiff's Motion for Partial Summary Judgment (ECF No. 34), Defendants' Motion to Strike Plaintiff's Surreply (ECF No. 38), and the parties' Joint Motion to Reset Pending Deadlines (ECF No. 68).  The Court decides as follows:

## I.  Background

The following facts are taken from the pleadings and attached documents.

Timothy Heston purchased medical insurance coverage from Defendants over the past several years.  (Am. Compl. ¶ 12, ECF No. 8.)  On April 17, 2019, Heston applied for and, effective April 29, 2019, was issued health insurance coverage under a Certificate of Insurance for "Global Medical Insurance Silver without Creditable Coverage" ("the Certificate"), under which he was promised certain insurance benefits for medical expenses and costs incurred by him for his health care.  (*Id.* ¶ 13; Answer ¶ 13, ECF No. 17; Application, Answer, Ex. 1 at 15, ECF No. 17-1.)   A true and correct copy of the Certificate is attached to the Amended Complaint as Exhibit 1.  (Am. Compl. ¶ 13, ECF No. 8; Answer ¶ 13, ECF No. 17.)

Heston was provided with a "Declaration of Medical Insurance," referencing Certificate GMMS382152741 showing the referenced effective date, and the annual premium charge of $1,353.  (Am. Compl. ¶ 13, ECF No. 8; Answer ¶ 13, ECF No. 17.)  A true and correct copy of the Declaration is attached to the Amended Complaint as Exhibit 2.  (Am. Compl. ¶ 13, ECF No. 8; Answer ¶ 13, ECF No. 17.)  The Declaration identifies IMG as the Plan Administrator and Sirius as the Insurer: "Administered

by: International Medical Group®, Inc. as agent for the Insurer . . . Insurer: Sirius International Insurance Corporation." (ECF No. 8-1 at 2.) The coverage Heston was promised under the Certificate and Declaration was part of Group Insurance Coverage provided to insureds under a "Master Policy" referenced in the Certificate.

In September 2019, Heston became concerned about certain changes in his health related to his stomach and digestive system. These were new symptoms that he had not experienced previously, and they were symptoms for which he had never before sought any medical advice or care. In September 2019, and later in October 2019, Heston sought a medical evaluation for what was later diagnosed as Stage IV Bowel Cancer. He immediately began treatment for this condition. (Am. Compl. ¶ 14.)

Heston made a claim for the medical insurance coverage promised in the Certificate and Declaration. His claim was denied on the basis that his underlying illness was a "pre-existing" condition. (*Id*. ¶ 15.) Heston appealed the denial, which appeal was denied on the basis of the pre-existing condition exclusion language. (*Id*. ¶¶ 16–17.)

Heston filed a First Amended Complaint for breach of contract, damages, and a declaratory judgment as to the parties' rights under the insurance policy. Plaintiff alleges that the pre-existing condition exclusion violates the Indiana Insurance Code, common law, Indiana law, and federal law. Plaintiff further claims the denial of Heston's claim was a breach of contract and an unreasonable and bad faith breach of contractual obligations. Plaintiff has not alleged that Heston's bowel cancer was *not*

a pre-existing condition as defined by the insurance policy. Defendants filed their Answer to the Amended Complaint, denying all liability.

The Amended Complaint alleges that:

> Plaintiff is informed and believes that at all times mentioned herein, Defendants, and each of them, were the agents, servants, employees, joint venturers and/or alter egos of each other, and were, as such, acting within the course, scope and authority of said agency, employment, joint venture and/or alter ego relationship, and that each and every Defendant, as aforesaid, when acting as a principal, was negligent in the selection, hiring, acquiring, and/or creating of each and every other Defendant as an agent, employee, joint venturer, and/or alter ego.

(Am. Compl. ¶ 9, ECF No. 8.) Defendants have admitted that IMG acts as the disclosed agent for its principal Sirius, and that at all times relevant, IMG was acting within the course, scope and authority granted to it through that principal-agent relationship. (Answer ¶ 9, ECF No. 17.)

The Application identifies IMG as Sirius's agent: "GMMI is underwritten by Sirius International Insurance Corporation (PUBL). It is distributed, managed and administered, as agent for and on behalf of the Company, by [IMG]." (ECF No. 17-1 at 10.) The Application also states that "[Plaintiff] purposefully initiate[s] and take[s] advantage of the privilege of conducting business with the Company in Indiana, through IMG as its selected agent and administrator . . . ." (*Id.* at 6, 16.) Furthermore, the Application contains an Acknowledgement that states: "[T]he Company, as carrier and underwriter of the plan, is solely liable for the coverages and benefits to be provided thereunder, and IMG acts solely as agent/coverholder for the Company and has no direct or independent liability under the Master Policy or any Certificate or policy of insurance." (*Id.* at 7, 16.)

4

The Application provides in relevant part:

> **SUBSCRIPTION** (For coverage issued by Sirius International Insurance Corporation (publ) only): I (we) hereby apply to the Global Medical Services Group Insurance Trust, c/o Mutual Wealth Management Group . . . for Global Mission Medical Insurance . . . . I (we) understand and agree that: (i) no coverage will be effective until this Application has been duly accepted in writing by the Company, (ii) no modification or waiver relating to this Application or the coverage applied for will be binding upon the Company or IMG unless approved in writing by an officer of the Company or IMG; (iii) IMG and the Company will rely on the accuracy and completeness of the information provided herein . . . , (v) by submission of this Application and/or any future claim for benefits I (we) purposefully initiate and take advantage of the privilege of conducting business with the Company in Indiana, through IMG as its selected agent and administrator . . . .

(ECF No. 17-1 at 6.)  The Application further provides that "I (we) agree that Indiana surplus lines law shall govern all rights and claims arising under this insurance . . . ."  (ECF No. 17-1 at 6.)

The Certificate, evidencing the terms of the insurance contract, states that:

> **AGREEMENT:**  Sirius International Corporation (publ) (the Company) promises and agrees to provide the Insured Person with the benefits described in the Master Policy, as outlined herein and coverage for which is certified hereunder by the Company . . . .  The Company hereby recognizes International Medical Group®, Inc., as the Company's authorized representative and as the Plan Administrator of the Master Policy and this Certificate.

(ECF No. 8-1, 10.)  The Certificate declares: "**ENTIRE AGREEMENT:**  The Master Policy, the Application, the Declaration and any Riders shall constitute the entire agreement among the Company, the Assured, and the Insured Person" (the "Policy"). (*Id.*)  The "Master Policy" is defined as:

> **Master Policy:**  The applicable Master Policy issued by the Company to the Assured, and under which insurance coverage and benefits are provided by the Company to the Insured Person, subject to the Terms thereof, and as outlined and evidenced by this Certificate and subject to

5

the Terms hereof.  The Company, as insurance carrier and underwriter of the Master Policy, is solely liable and responsible for the coverage and benefits provided thereunder.

(D.E. 8-1, 31.)  "Plan Administrator" is defined as:

> **Plan Administrator:**  The Plan Administrator for this insurance is International Medical Group®, Inc. . . . .  As the Plan Administrator, International Medical Group, Inc., acts solely as the disclosed and authorized agent and representative for and on behalf of the Company, and does not have, and shall not be deemed, considered or alleged to have any, direct, indirect, joint, several, separate, individual, or independent liability, responsibility or obligation of any kind under the Master Policy, the Declaration, any Riders or this Certificate to the Insured Person or to any other person or entity . . . .

(*Id.*)  But the Certificate states:  "This Certificate is not part of the insurance contract."  The Certificate provides for certain exclusions from the Policy, including pre-existing conditions:

> **EXCLUSIONS:**  Except as expressly provided for in the BENEFIT SUMMARY, all Charges, costs, expenses and/or claims incurred by the Insured Person, and directly or indirectly relating to or arising or resulting from or in connection with any of the following acts, omissions, events, conditions, Charges, consequences, claims, Treatment (including diagnoses, consultations, tests, examinations and evaluations related thereto), services and/or supplies are expressly excluded from coverage under this insurance, and the Company shall provide no benefits or reimbursements and shall have no liability or obligation for any coverage thereof or therefor:

> (3) **PRE-EXISTING CONDITIONS:**  (a) Charges relating directly or indirectly to Unknown Conditions are excluded from coverage under this insurance until the Insured Person has maintained coverage under this insurance plan continuously for the number of months shown in the BENEFIT SUMMARY.

(ECF No. 8-1, 24–25.)  An "Unknown Condition" is defined as "An Illness or Injury that was not previously manifested, symptomatic, known to the Insured Person, diagnosed, or Treated prior to the Effective Date."  (*Id.* at 33.)  The Master Policy

6

includes these exact same terms—"Exclusions," "Pre-Existing Conditions Exclusion," and "Unknown Condition"—and the exact same definitions for each term.  (ECF No. 17-2, 23–24, 32.)

Plaintiff cites to Plaintiff's Responses to Defendants' Motion to Strike Jury Trial Request, Heston's Declarations of April 28, 2020, (ECF No. 26-1, ¶ 12), and of April 30, 2020, (ECF No. 26-2 ¶¶ 2 & 3), for the assertion that the Certificate and Declaration were the only two documents Heston received after paying his premium for the year.  Plaintiff asserts that Heston did not see the Master Policy until the motion for judgment on the pleadings was filed.  Plaintiff also asserts that Heston did not receive the accepted Application, which is attached as Exhibit 1 to the Answer.  There is no dispute, however, that Heston had completed and submitted the Application in order to obtain the insurance policy at issue.

## II.  Discussion

### A.  Motion to Strike Plaintiff's Surreply

IMG filed a motion for judgment on the pleadings and a supporting brief; Sirius also filed a motion for judgment on the pleadings and a supporting brief.  Plaintiff filed one combined response in opposition to both motions.  Defendants together filed a Combined Reply in Support of their Individual Motions for Judgment on the Pleadings.  Then, without seeking leave of Court, Plaintiff filed Plaintiff's Sur-Reply to Defendants' Response Regarding Defendants' Motion for Judgment on the Pleadings, asserting that she was doing so to respond to new arguments and authorities asserted in Defendants' Combined Reply.

The Local Rules provide for a supporting brief, response brief, and reply; they do not authorize the filing of a surreply on a motion under Federal Rule of Civil Procedure 12.  S.D. Ind. L.R. 7-1.  The Local Rules allow for a surreply in connection to a summary judgment motion, and then only in the limited circumstances—"if the movant cites new evidence in the reply or objects to the admissibility of the evidence cited in the response."  S.D. Ind. L.R. 56-1(d).

Because Plaintiff failed to seek leave to file a surreply, and further because the Combined Reply in fact does not raise any new argument, Defendants' Motion to Strike Plaintiff's Surreply is **granted**.  In any event, consideration of the surreply would not have made any difference in the Court's decision on the Rule 12(c) motions.

### B. Motions for Judgment on the Pleadings

#### 1. Legal Standard

Rule 12(c) authorizes motions for judgment on the pleadings to be filed after the pleadings are closed, but early enough not to delay trial.  Fed. R. Civ. P. 12(c).  The pleadings include the complaint and the answer and any written instrument or other document attached as an exhibit to the complaint or answer.  Fed. R. Civ. P. 7(a); Fed. R. Civ. P. 10(c).  Defendants timely filed their Rule 12(c) motions.

"A motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure is governed by the same standards as a motion to dismiss for failure to state a claim under Rule 12(b)(6)."  *Adams v. City of Indianapolis*, 742 F.3d 720, 727–28 (7th Cir. 2014) (citing *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007)).  Thus, "[t]o survive a motion for judgment on the pleadings, a complaint

must 'state a claim to relief that is plausible on its face.'" *Wagner v. Teva Pharm. USA, Inc.*, 840 F.3d 355, 357–58 (7th Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint meets this standard when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* at 358 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  In considering a motion for judgment on the pleadings, the Court accepts the complaint's factual allegations as true and draws all reasonable inferences in the plaintiff's favor. *Taylor v. JPMorgan Chase Bank, N.A.*, 958 F.3d 556, 562 (7th Cir. 2020).

### 2. IMG's Motion for Judgment on the Pleadings

In moving for judgment on the pleadings, IMG argues that Sirius is the insurer and the party to the underlying insurance contract.  IMG further argues that it is Sirius's disclosed agent and did not take any actions outside the scope of its authority as agent, and IMG is not a party to the insurance contract or otherwise in privity of contract with Heston.  Therefore, IMG contends it has no liability to Heston under the insurance contract or as an insurer.

Plaintiff responds that, based on the documents Heston was sent after paying his annual premium—that is, the Certificate and Declaration—the entity liable on the insurance contract was unknown and the allegations raise a question of fact as to which entity is liable.  Plaintiff argues that if IMG has the authority to modify or waive a requirement in the insurance application or coverage, it was more than a mere agent of Sirius for liability purposes.  In addition, Plaintiff asserts that IMG

drafted the Exclusionary Rider No. 1 and added it to the Policy's exclusions, evidencing that IMG was more than a mere agent.  (ECF No. 17-1 at 23.)  She also asserts that IMG drafted the Appeal of Claims Determination letter to Heston advising that his appeal had been denied.  (ECF No. 8-4.)

"In Indiana, a suit for breach of contract may be brought only against 'a party to the contract or against those in privity with the party.'"  *Broadhurst v. Moenning*, 633 N.E.2d 326, 334 (Ind. Ct. App. 1994) (quoting *Implement Serv., Inc. v. Tecumseh Prods. Co.*, 726 F. Supp. 1171, 1182 (S.D. Ind. 1989)).  "The parties to a particular contract normally may be identified as a matter of law from the terms of the contract, absent some sort of ambiguity."  *Id.*

"Indiana recognizes the general rule that where an agent discloses the identity of his principal and does not exceed his authority when contracting on the principal's behalf, the agent is not personally bound by the contract unless the agent agrees to be so bound."  *Boesch v. Marilyn M. Jones & Assocs.*, 712 N.E.2d 1061, 1062–63 (Ind. Ct. App. 1999) (citing, inter alia, *Winkler v. V.G. Reed & Sons, Inc.*, 638 N.E.2d 1228, 1231 (Ind. 1994)).  The Amended Complaint alleges that IMG was an agent of Sirius and was "acting within the course, scope and authority of said agency."  (Am. Compl. ¶ 9 (alleging both Defendants acted as each other's agent), ECF No. 8.)  The Answer admits that IMG acted only as the disclosed agent for its principal Sirius and that IMG was acting within the course, scope, and authority granted to it.  (Answer ¶ 9, ECF No. 17.)

10

Review of the Application, Declaration, and Master Policy, the documents that comprise the insurance contract, clearly and unambiguously establishes that the parties to the insurance contract are Heston and Sirius. IMG is not the insurer and is not a party to the insurance contract.

IMG clearly and unambiguously disclosed the identity of its principal Sirius to Heston in the Application, Certificate, and Declaration. Heston completed and submitted the Application, and he admitted that he received the Certificate and Declaration. Although the Certificate is not part of the insurance contract, it evidences and contains the same terms, with the same definitions, as the Master Policy. The agency relationship and Sirius's identity as principal were also disclosed in the Master Policy, even though Heston claimed he did not review the document until this lawsuit had been filed. To the extent the allegation in paragraph 9 of the Amended Complaint attempts to identify IMG as the principal and Sirius as the agent, the documents attached to the Amended Complaint and Answer belie such an allegation: the documents clearly and unequivocally identify IMG as agent for its principal, Sirius. Furthermore, none of the allegations in the pleadings raises a plausible claim that IMG exceeded its authority when acting on Sirius's behalf. Plaintiff has not alleged that IMG has any independent contractual obligation to Heston or otherwise agreed to be bound by the insurance contract. Therefore, the Court concludes that the general rule applies, and IMG is not personally bound by the insurance contract.

Plaintiff also brings a claim based on a breach of the duty of good faith and fair dealing. "Indiana law recognizes a legal duty, implied in all insurance contracts, for

11

the insurer to deal in good faith with its insured." *Missig v. State Farm Fire & Cas. Co.*, 998 N.E.2d 216, 229 (Ind. Ct. App. 2013) (citing *Freidline v. Shelby In. Co.,* 774 N.E.2d 37, 40 (Ind. 2002)).  But IMG is not the insurer and thus owes no duty of good faith to Heston.  Accordingly, the Court finds that IMG's motion for judgment on the pleadings should be granted.

### 3.  Sirius's Motion for Judgment on the Pleadings

Sirius likewise moves for judgment on the pleadings, contending that it acted under the pre-existing condition exclusion of the surplus lines insurance policy and did not breach the terms of the contract.[2]  Sirius maintains that enforcing the terms of the insurance contract cannot as a matter of law constitute a breach of the duty of good faith and fair dealing.  Lastly, Sirius argues that Plaintiff's claim for declaratory relief turns on the breach of contract claim.

Plaintiff responds that the pre-existing condition exclusion in the insurance contract is contrary to Indiana law, Ind. Code § 27-8-5-5.2(c), and federal law, namely the Patient Protection and Affordable Care Act (the "ACA"), 42 U.S.C. § 300gg-3, and is therefore unenforceable.

"An insurance policy is a contract between the parties; in determining policy liabilities, the law of contract applies." *Cincinnati Ins. Co. v. Mallon*, 409 N.E.2d 1100, 1103 (Ind. Ct. App. 1980).  To establish a breach of contract, a plaintiff must prove these elements: the existence of a contract, the defendant's breach of that contract,

---

[2] Its motion relies in part on an opinion from the Indiana Department of Insurance, but the Court does not rely on that opinion in reaching its decision because the opinion is not considered part of the pleadings and is not properly before the Court.

and damages. *Metro Holdings One, LLC v. Flynn Creek Partner, LLC*, 25 N.E.3d 141, 157 (Ind. Ct. App. 2014). "A party breaches a contract when it fails to perform all of the obligations that it has agreed to undertake." *Breeding v. Kye's Inc.,* 831 N.E.2d 188, 191 (Ind. Ct. App. 2005). An insurer may "determine by its contract what risks it is undertaking to insure, provided policy provisions do not violate statutory mandates or are not against public policy." *Mallon*, 409 N.E.2d at 1103.

The insured must prove coverage under the insurance policy. *Southbend Escan Corp. v. Federal Ins. Co.*, 647 F. Supp. 962, 966 (N.D. Ind. 1986). The insurer bears the burden of proving an exception to coverage. *Id.*

The insurance contract at issue in this case consists of the Master Policy, Application, Declaration, and any Riders. (ECF No. 8-1 at 10.) The Application provides for the exclusion of pre-existing conditions. (ECF No. 17-1 at 16.) The Master Policy provides for the same exclusion. (The Certificate does, too. (ECF No. 8-1 at 24-25.)) Plaintiff has never asserted that Heston's condition was *not* a pre-existing condition as defined under the Policy.[3] (*See, e.g.*, ECF No. 8.) Plaintiff's request for declaratory relief seeks a declaration of the parties' rights and, essentially, seeks a determination that damages are due on the breach of contract claim. This claim necessarily stands or falls with the breach of contract claim. And a determination of the breach of contract claim depends on whether the pre-existing conditions exclusion is enforceable under Indiana insurance law and the ACA.

---

[3] An independent peer review determined that Heston's condition was a pre-existing condition as defined under the insurance policy. (ECF Nos. 8-4, 17-5.) Ultimately, however, whether Heston's condition was a pre-existing condition would appear to be a question of fact.

An insurer's duty of good faith and fair dealing "includes the obligation to refrain from (1) making an unfounded refusal to pay policy proceeds; (2) causing an un-founded delay in making payment; (3) deceiving the insured; and (4) exercising any unfair advantage to pressure an insured into a settlement of his claim." *Erie Ins. Co. v. Hickman by Smith*, 622 N.E.2d 515, 519 (Ind. 1993).   Nonetheless, the insurer "may, in good faith, dispute claims." *Id.* at 520.   The antithesis of good faith is bad faith which means "more than bad judgment or negligence." *Johnston v. State Farm Mut. Auto. Ins Co.,* 667 N.E.2d 802, 805 (Ind. Ct. App. 1996).   "Bad faith involves the conscious doing of wrong because of dishonest purpose or moral obliquity." *Id.*   If the Policy's pre-existing conditions exclusion is enforceable, then Plaintiff would be una-ble to prove a breach of the duty of good faith and fair dealing.

The first issue for the Court, then, is whether the pre-existing exclusion in the Policy is enforceable under Indiana law and the ACA.   "Generally, a contract made in violation of a statute is void." *Duvall v. Heart of CarDon, LLC*, No. 1:17-cv-04439-JRS-MJD, 2020 WL 1274992, at *9 (S.D. Ind. March 17, 2020) (quoting *Harbour v. Arelco, Inc.*, 678 N.E.2d 381, 385 (Ind. 1997)).   If the provision is enforceable under Indiana law and the ACA, the failure to pay claims based on the pre-existing condi-tion exclusion would not constitute a breach of contract or a violation of the duty of good faith and fair dealing.

Indiana insurance law governs accident and sickness insurance and surplus lines insurance.   *See generally* Ind. Code §§ 27-8-5-0.1 to 27-8-5-31.5 (accident and sickness insurance); Ind. Code §§ 27-1-15.8-1 to 27-1-15.8-4 (surplus lines producers).

14

Accident and sickness insurance generally insures for losses caused by accident or sickness and is a more traditional type of insurance.  Surplus lines insurance is different:

> Most states heavily regulate typical insurers, such as by approving their rates, examining the terms of their policies, and monitoring their financial solvency. The insurers that are subject to such extensive regulation in a state are known as "admitted" or "authorized" insurers. The goal of such regulation is consumer protection. Such extensive regulation, however, creates barriers to entry into the insurance market and reduces the types of policies available for consumers to purchase. When a consumer has an insurance need that cannot be met by an authorized or admitted insurer, the state will allow that consumer to purchase insurance from certain unauthorized or nonadmitted insurers. These are surplus-lines insurers, and they are regulated differently than admitted insurers. While admitted insurers are regulated directly, surplus-lines insurers are typically regulated indirectly through insurance brokers who are licensed by the state to place surplus-lines insurance. Although nearly any insurance could be sold on a surplus-lines basis, in general such insurance covers unusual risks that the admitted insurance market is unprepared or unable to accept.

*Midwest Com., LLC v. Cincinnati Specialty Underwriters Ins. Co.*, 399 F. Supp. 3d 736, 741–42 (E.D. Wis. 2019) (citations omitted).

Indiana surplus lines insurance carriers and surplus lines insurance policies are governed by Indiana Code § 27-1-15.8 *et seq.*  "Surplus lines producer" means "a person who sells, solicits, negotiates, or procures from an insurance company *not licensed to transact business in Indiana* an insurance policy that cannot be procured from insurers licensed to do business in Indiana."  Ind. Code § 27-1-15.6-2(20) (emphasis added).  Surplus lines producers are required to obtain a license.  *See* Ind. Code §§ 27-1-15.8-1 to 27-1-15.8-4.  Surplus lines producers "may receive qualification for a license in one. . . or more of the kinds of insurance defined in Class 2 and Class 3 of IC 27-1-5-1 from insurers that are authorized to do business in one

. . . or more states of the United States of America but are not authorized to do business in Indiana . . . . " Ind. Code § 27-1-15.8-3(a).  This includes policies "[t]o insure any persons against bodily injury, disablement or death resulting from accident and against disablement resulting from disease and every insurance appertaining thereto."  Ind. Code § 27-1-5-1 (2)(a) ("Class 2(a) policies").  Companies eligible to issue Class 2 Policies in Indiana include foreign or alien companies "authorized to transact business in Indiana."   Ind. Code § 27-1-5-1.

"Accident and sickness insurance" is defined as "insurance described in Class 1(b), Class 1(c)(2), or Class 2(a)" of Indiana Code § 27-1-5-1.  *See* Ind. Code § 27-1-12.8-1. Thus, a Class 2(a) policy could constitute "accident and sickness insurance" under Indiana law.  *See* Ind. Code  § 27-1-5-1.  Indiana law limits the restrictions that accident and sickness insurance policies may place on pre-existing conditions exclusions. "The benefits provided by . . . [a] policy of accident and sickness insurance . . . may not be excluded, limited, or denied for more than twelve (12) months after the effective date of the coverage because of a preexisting condition of the individual."  Ind. Code § 27-8-5-2.5(b).  Furthermore, an accident and sickness insurance policy:

may not define a preexisting condition . . . more restrictively than as:

(1) a condition that would have caused an ordinarily prudent person to seek medical advice, diagnosis, care, or treatment during the twelve (12) months immediately preceding the effective date of the plan;

(2) a condition for which medical advice, diagnosis, care, or treatment was recommended or received during the twelve (12) months immediately preceding the effective date of the plan; or

(3) a pregnancy existing on the effective date of the plan.

16

Ind. Code § 27-8-5-2.5(c).  Indiana law further restricts accident and sickness insurance policies: "This chapter [Chapter 5] shall be applied in conformity with the requirements of the federal Patient Protection and Affordable Care Act (P.L. 111-148), as amended by the federal Health Care and Education Reconciliation Act of 2010 (P.L. 111-152), as in effect on September 23, 2010." Ind. Code § 27-8-5-1(c).  Indiana law generally prohibits an insurer from transacting any insurance in Indiana without a certificate of authority from the insurance commissioner.  However, certain transactions are excepted from this prohibition, including "[t]he lawful transaction of surplus lines insurance. . . . " Ind. Code § 27-4-5-2(a).  The pre-existing conditions exclusion in the Policy is more restrictive than the provision in Indiana Code § 27-8-5-2.5(c).

Thus, whether Indiana law's restrictions on pre-existing conditions apply to the Policy at issue in this case depends on whether the Policy is a surplus lines insurance policy or an accident and sickness insurance policy.  Defendants have provided the Court and Plaintiff with supplemental authority, namely, the court's summary judgment ruling in *Carvajal v. Int'l Medical Group, Inc. & Sirius Int'l Insurance Corp.*, Cause Number 49D01-1909-MI-037003 (Marion Super. Ct. Aug. 17, 2020), *as amended*, (Marion Super. Ct. Nov. 2, 2020), regarding the applicability of the accident and sickness insurance provisions of the Indiana Code and the ACA's protections for pre-existing conditions to surplus lines insurance.  The *Carvajal* case is on point with this case and the Court finds persuasive that court's opinions as to the non-

17

applicability of Indiana's restrictions on pre-existing conditions and the ACA's pro-
tections to surplus lines insurance.

The *Carvajal* court determined that "accident and sickness insurance" policies un-
der Indiana Code § 27-8-5-1 include only those policies issued by insurance companies
"authorized to transact business in Indiana." (Notice Suppl. Authority, Ex. 1, Order,
11, 14–15, ECF No. 55-1.) The court also determined that because surplus lines pol-
icies are not issued by companies authorized to do business in Indiana, surplus lines
insurance policies are exempt from the requirements of Indiana Code § 27-8-5. (*Id.*
at 15.) The court's conclusions find support in a Seventh Circuit decision holding that
an Illinois insurance statute applied only to insurers authorized to conduct business
in the state, and the statute had no application to a policy issued by a surplus lines
insurer who was not authorized to transact business in Illinois. *Corday's Dep't Store,
Inc. v. New York Fire & Marine Underwriters, Inc.*, 442 F.2d 100, 104 (7th Cir. 1971).

Generally, a surplus lines insurer is not authorized to transact business in Indi-
ana. *See* Ind. Code § 27-1-15.6-2(20) (defining "surplus lines producer" as "a person
who . . . procures from an insurance company *not licensed to transact business in
Indiana* an insurance policy that cannot be procured from insurers licensed to do
business in Indiana") (emphasis added); *Midwest Com.*, 399 F. Supp. 3d at 741–42
(explaining that surplus line insurers are unauthorized or not admitted in the state
and subject to fewer regulations than authorized or admitted insurers). However,
the Court is persuaded by *Carvajal*'s determination that "insurance properly de-
scribed as Class 2(a) insurance under Ind. Code 27-1-5-1 could potentially constitute

18

'accident and sickness insurance,'" which would mean that such insurance is governed by the provisions of Indiana Code § 27-8-5 *et seq.*  (*See* Notice Suppl. Authority, Ex. 1, Order Granting in Part & Denying in Part Defs.' Mot. Summ. J. & Denying Pl.'s Partial Mot. Summ. J., 10, 13; *but see id.* at 14 (noting that not "all Class 2(a) policies would necessarily be treated as 'accident and sickness insurance'"); ECF No. 55-1.)  Therefore, whether Class 2(a) insurance would constitute accident and sickness insurance subject to the pre-existing conditions requirements of Indiana Code § 27-8-5-2.5 turns on whether the insurer, here Sirius, is authorized to transact business in Indiana.  (*See* Notice Suppl. Authority, Ex. 1, *Carvajal* Order at 13–15.)

Although the Amended Complaint alleges, and the Answer to the Amended Complaint admits, that Sirius is a surplus lines insurance carrier, (Am. Compl. ¶ 8, ECF No. 8; Answer ¶ 8, ECF No. 17), which by definition implies that Sirius is not authorized to transact business in Indiana, neither the pleadings, Plaintiff's motion for partial summary judgment, nor Defendants' response directly addresses whether Sirius is in fact authorized to transact business in Indiana.[4]  Sirius relies heavily on the district court's opinion in *Vas v. Sirius International Insurance Corp.*, 2:06-cv-00097-LLD (E.D. Pa. Jan. 19, 2007), which concluded that a similar pre-existing conditions

---

[4] Similarly, the pleadings do not address IMG's licensure in Indiana.  (*See* Am. Compl. ¶ 7 (IMG "was and is a corporation that is headquartered in and has its principal place of business in Indianapolis, Indiana."), ECF No. 8.)  Defendants admitted this allegation in their Answer.  (Answer ¶ 7, ECF No. 17.)  The summary judgment briefing in *Vas v. Sirius Int'l Ins. Corp.*, 2:06-cv-00097-LLD (E.D. Pa. Jan. 19, 2007), included an affidavit establishing that IMG was a licensed surplus lines agent, *see Vas*, 2:06-cv-00097-LLD, Mot. Summ. J., Ex. V, Kurt Kipfer Aff., ECF No. 39-23), on which the district court relied in granting Sirius summary judgment, *see Vas*, Mem. and Order, 11–12, ECF No. 47).  The *Vas* opinion is attached as Exhibit 1 to Sirius' brief in support of its motion for judgment on the pleadings. (*See* ECF No. 30-1.)

exclusion was enforceable under Indiana law.  There, the court reasoned that Sirius was not an authorized insurer in Indiana and was therefore "not required to comply with Indiana insurance statutes except as they specifically may pertain to surplus lines insurers." (*Vas*, Memorandum, 13, ECF No. 30-1.)  The summary judgment briefing in *Vas* included affidavits establishing that IMG was a licensed surplus lines agent and that Sirius was a surplus lines insurer, (*see Vas*, 2:06-cv-00097-LLD, Mot. Summ. J., Exs. S & V, Kelly Donica Aff. & Kurt Kipfer Aff., ECF Nos. 39-20 & 39-23), on which the district court relied in granting Sirius summary judgment, *see Vas*, Mem., 11–12, ECF No. 30-1.)

The Amended Complaint alleges that Defendants denied Heston's claims for benefits based on a pre-existing conditions exclusion that is unenforceable under Indiana law.  If Indiana law's pre-existing conditions requirements apply to the Policy issued to Heston, then the pre-existing conditions exclusion would be unenforceable and Sirius may be held liable for breach of contract.  While Sirius may bring a properly supported motion for summary judgment, the Amended Complaint has sufficiently stated a claim for breach of contract and a breach of the duty of good faith and fair dealing.

Plaintiff further argues that the pre-existing conditions exclusion in the Policy contravene the ACA's prohibition on pre-existing conditions exclusions.  Defendants respond that the ACA is inapplicable to surplus line insurance policies and applies only to "group health plans" and "health insurance issuers."

20

Under the ACA, "[a] group health plan and a health insurance issuer offering group or individual health insurance coverage may not impose any preexisting condition exclusion with respect to such plan or coverage." 42 U.S.C. § 300gg-3. The ACA defines "group health plan" as "an employee welfare benefit plan (as defined in section 3(1) of the Employee Retirement Income Security Act of 1974 ["ERISA"]) to the extent that the plan provides medical care . . . to employees or their dependents . . . ." 42 U.S.C. § 300gg-91(a)(1). ERISA defines "employee welfare benefit plan" as "any plan . . . established or maintained by an employer or by an employee organization, or by both . . . for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, [or] disability . . . ." 29 U.S.C. § 1002(1). The Policy at issue in this case is not an "employee welfare benefit plan" and was not established or maintained by an employer. The Policy therefore is not a "group health plan" under the ACA. Rather, the Amended Complaint alleges that Heston purchased the Policy. (Am. Compl. ¶ 2, ECF No. 8.)

The ACA defines "health insurance issuer" in relevant part as "an insurance company, insurance service, or insurance organization . . . which is licensed to engage in the business of insurance in a State and which is subject to State law which regulates insurance . . . ." 42 U.S.C. § 300gg-91(b)(2). The pleadings do not address whether Sirius is licensed to engage in the business of insurance in Indiana. If Sirius is not so licensed, then it would not qualify as a "health insurance issuer" under the ACA,

and the ACA's prohibition on pre-existing conditions exclusions would not apply to the Policy.

As with the applicability of the Indiana's requirements for pre-existing conditions exclusions, the Court is unable to determine at this pleadings stage whether the ACA's prohibition on pre-existing conditions exclusions is applicable to the Policy. If the ACA's prohibition is inapplicable, then the pre-existing conditions exclusion would not be unenforceable. The issue may be decided on summary judgment, but it cannot be said that the Amended Complaint fails to state a claim for breach of contract or breach of the duty of good faith and fair dealing.

### c. Plaintiff's Motion for Partial Summary Judgment

Plaintiff seeks partial summary judgment on the issue of whether Defendants are liable for breach of contract of the insurance policy and liable for payments of medical expenses. Plaintiff contends that the Policy's pre-existing conditions exclusion is invalid and unenforceable under Indiana health insurance law and the ACA, and she asserts that the insurance policy should be construed as provided in Indiana Code §27-8 *et seq.*

Plaintiff's motion must be denied for several reasons. First, the Court has determined that IMG is not liable on the Policy and should be granted judgment in its favor. Furthermore, Plaintiff's motion hinges on whether the pre-existing conditions exclusion is unenforceable under Indiana health insurance law and the ACA. That remains to be determined. Defendants have argued that the Policy is a surplus lines insurance policy and that Indiana's and the ACA's restrictions on pre-existing

conditions exclusions are inapplicable to the surplus lines insurance policies.  If Defendants are correct, then the pre-existing conditions exclusion is enforceable and liability would turn on whether Heston's cancer was a pre-existing condition within the meaning of the Policy, which is a question of fact.  And Plaintiff has not argued that Heston's cancer did *not* constitute a pre-existing condition under the terms of the Policy.

## Conclusion

For the reasons stated, IMG's Motion for Judgment on the Pleadings (ECF No. 27) is **granted**; Sirius's Motion for Judgment on the Pleadings (ECF No. 29) is **denied**; Plaintiff's Motion for Partial Summary Judgment (ECF No. 34) is **denied**; and Defendants' Motion to Strike Plaintiff's Surreply (ECF No. 38) is **granted**.  The claims against IMG are **dismissed with prejudice**, and IMG is terminated as a defendant to this action.

Because this Order resolves the pending dispositive motions, the Joint Motion to Reset Pending Deadlines (ECF No. 68) is **denied as moot**.

**SO ORDERED.**

Date: 3/24/2021

JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution to all parties of record via CM/ECF.